Thomas M. DOUGHERTY, Plaintiff,

v.

Richard S. SCHWEIKER, Secretary of Health and Human Services, Defendant.

No. 79 CV 3127 (ERN).

United States District Court, E. D. New York.

Aug. 3, 1982.

Binder & Binder by Charles E. Binder, Hauppauge, N. Y., for plaintiff.

Edward R. Korman, U. S. Atty., E.D.N.Y. by Michael Cavanagh, Asst. U. S. Atty., Brooklyn, N. Y. (Frank V. Smith, III, Regional Atty., and Julia T. Reed, Asst. Regional Atty., Dept. of Health & Human Services, New York City, of counsel), for defendant.

## MEMORANDUM OF DECISION AND ORDER

NEAHER, District Judge.

Plaintiff in this action brought under 42 U.S.C. § 405(g) seeks judicial review of a final determination of the Secretary of Health and Human Services (Secretary) which denied his renewed application for a period of disability and disability insurance benefits.

Plaintiff, 41 years old at the time of his hearing, is a former New York City Housing Authority police officer. He completed two years of high school and became a police officer in December 1962 after holding jobs as a bricklayer's helper, subway porter, and laborer in the City's Department of Parks. In February 1976, he injured his head and lower back while stepping out of an automobile which lurched, causing him to be thrown to the ground. He applied for and was granted Social Security disability insurance benefits commencing September 1976, which he continued to receive until February 1978. In November 1977 he returned to work and was assigned a sedentary desk job answering telephones. After two weeks, he went on sick leave and in July 1978 was granted "ordinary disability retirement" as of February 24, 1978. Tr. 78.[1] On October 6, 1978 he filed his renewed application for disabili-

ty benefits, describing his impairment as "Lower back trouble—spine problem." Tr. 41.

Following initial and reconsideration denials of his application, plaintiff was granted a *de novo* hearing before an administrative law judge (ALJ) on July 12, 1979. He was represented by an attorney and was the sole witness. Plaintiff testified that he is 5 feet 9 inches tall and weighs between 175 and 180 pounds. He was divorced in 1976 and remarried in March 1977, a period when he was not working and was receiving disability. He has fathered six children, four of whom are under 18.

Regarding his disability, plaintiff testified that he has pain in "my entire lower back and my left testicle," and sometimes in his heels, Tr. 34, 38. This prevents him from doing any work, since "I have no strength. I can't push nothing. I can't pull ... I cannot sit down without pain." *Id.* He uses portable bed traction at home from Monday through Thursday for 12 to 16 hours but not on Friday through Sunday. Tr. 35–36. He does nothing around the house; "[j]ust lay on the couch ... and listen to the radio." Tr. 37. In response to his attorney's questions, he testified he was "constantly" in pain which was not relieved by medication. Tr. 38.

There is no question that plaintiff met his initial burden to establish prima facie that his impairment was sufficiently severe to preclude return to his former occupation as a police officer. Indeed, the ALJ specifically so found. Tr. 16. It was thus incumbent upon the Secretary "to show the existence of alternative substantial gainful work which exists in the national economy and which the claimant could perform, considering not only his physical capability, but as well his age, his education, his experience and his training." *Decker v. Harris*, 647 F.2d 291, 294 (2d Cir. 1981), quoting *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir. 1980).

Leaving aside the question of pain, there was sufficient credible medical evidence to permit the ALJ to find that plaintiff's spi-

---

1. References are to pages of the transcript of the administrative record.

nal impairment was not of such severe character as to render him wholly without residual functional capacity in terms of strength and exertional capabilities. The ALJ was not bound in this case by the opinion of a treating osteopath that plaintiff "is totally disabled and unable to work in any capacity." Tr. 92. That opinion was based in part upon "a diagnosis of ruptured disc of the lumbar spine." *Id.* But as Dr. David E. Lipton, another treating doctor and board certified orthopedic surgeon, pointed out in his report of June 4, 1979, a month earlier, the exact character of plaintiff's back condition is "rather speculative without myelographic investigation," which plaintiff does not wish to undergo. Tr. 91. Dr. Lipton further noted in his report that his initial examination of plaintiff reflected a "well-nourished, well-developed male appearing in no acute distress . . . who was able to flex the lumbosacral spine moderately well." Tr. 90. In his opinion, based upon examination and x-rays, plaintiff's condition is consistent with a diagnosis of spondylolysis, without evidence of the more serious condition of spondylolisthesis.[2] *Id.*

Earlier examinations of plaintiff provided additional support for the ALJ's finding that plaintiff's back impairment was of "mild" character. Thus Dr. Albert V. Messina, a board certified radiologist, in April 1978 saw "[n]o evidence of separation of fragments or spondylolisthesis" but only "[m]ild degenerative squaring . . . of the lumber and lumbrosacral interspaces," and noted that the sacroiliac joint was "intact." Tr. 80. Similarly, Dr. Ronald F. Goldstein, also a board certified radiologist, x-raying plaintiff in January 1979, found "[n]o evidence of fracture . . . [or] spondylolisthesis." He noted that the "vertebral bodies are normal in height and density" and saw "no narrowing of the intervertebral disc spaces." Tr. 81. Based upon the foregoing x-rays and his own physical examination of plaintiff, Dr. Harold Massoff, a board certified orthopedic surgeon, concluded on June 7, 1979, that plaintiff's complaints of pain were in an area that did not correspond to

nerve root compression of the fifth lumbar segment, and that plaintiff is able to walk about 10 blocks, stand for 1 to 2 hours, lift about 20 pounds, and sit for 4 hours at a time. He found further that while plaintiff would have difficulty bending, his grasp and manipulation, and fine and gross movements of the hands "are bilaterally intact." Tr. 84.

Apart from the question of pain, the weight of the medical evidence summarized above would indicate that there were no medical reasons why plaintiff should not have been able to perform the normal activities of weight-bearing, walking, standing, sitting, pushing, lifting, and grasping, but with some limitation on bending. Thus the critical question is whether the ALJ improperly disregarded the evidence of pain.

The ALJ, of course, was required to consider and evaluate plaintiff's subjective complaints of pain and symptomology, and it is clear that he did so. Tr. 15. Although claims of pain need not be supported by "objective" clinical findings, the medical evidence indicates, and the ALJ found that plaintiff has a degree of pain resulting from the "impairment of mild bilateral spondylolysis of L5." Tr. 15. The crucial question, however, is whether that degree of pain is of such severity as to preclude plaintiff from performing any work.

As previously noted, plaintiff testified that he was in pain "[c]onstantly" and obtained "no" relief from medication. Tr. 38. In this Circuit, however, the rule is clear that the ALJ

"is not obliged to accept without question the credibility of such subjective evidence. The ALJ has discretion to evaluate the credibility of a claimant and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant." *Marcus v. Califano,* 615 F.2d 23, 27 (2d Cir. 1979) (citations omitted).

Obviously, the ALJ did not credit the extreme declarations of plaintiff as to

**2.** Dorland's Medical Dictionary defines spondylolysis as the "[d]issolution of a vertebra," whereas spondylolisthesis is the "[f]orward dis-

placement of one vertebra over another, usually in the fifth lumbar" region. *Id.* at 1426.

the duration and severity of his pain. The credibility of the plaintiff is a matter left to the discretion of the hearing officer to determine. Here, there clearly is evidence to support that determination and it would be improper for the Court, which had no opportunity to assess the plaintiff's credibility, to overturn the ALJ's evaluation.

One final issue remains, however, which requires a remand. Although many other Circuits disagree, the rule in this Circuit is that the asserted availability of sedentary jobs administratively noticed by the Secretary's guidelines does not afford a claimant "sufficient notice" to enable him to present evidence that there are types of jobs which he cannot perform. *Campbell v. Secretary of the Department of Health and Human Services*, 665 F.2d 48 (2d Cir. 1981). In the absence of listing particular types of sedentary jobs suitable to the capabilities of plaintiff, the Court must conclude that the finding of "not disabled" in this case is not supported by substantial evidence. 665 F.2d at 54.

Accordingly, the case is remanded to the Secretary for a further hearing to develop evidence regarding particular types of sedentary jobs that plaintiff can perform.

SO ORDERED.